## STATE ex rel McALPIN, Respondent, v. GREMMELS, Appellant.

### (197 N. W. 682.)

(File No. 5241. 'Opinion filed March 7, 1924.)

1. **Bastards—Evidence—Criminal Law—Exclusion of Testimony Affecting Relatrix's Prior Chastity Held Prejudicial Error.**

    In bastardy proceedings, the exclusion of testimony as to the conduct of relatrix and another, both of whom had been drinking while occupying a hotel room with a witness, as affecting the prior chastity of relatrix, held prejudicial error under Rev. Code 1919, Sec. 2983.

2. **Bastards—Criminal Law—Evidence—Previous Unchastity of Relatrix Not Defense.**

    Previous unchastity of relatrix in bastardy proceedings is not a defense, but is evidence bearing on the paternity of the child.

3. **Bastards—Criminal Law—Evidence—Exclusion of Evidence of Prior Adulterous Conduct of Relatrix Held Error.**

    In bastardy proceedings, refusal to permit cross-examination of relatrix as to money received for adulterous intercourse with another man, while living apart from her husband, and her subsequent return to her husband, and the exclusion of answers to questions relative to a car received by relatrix in settlement of an action for seduction against such other man, held prejudicial error.

4. **Bastards—Trial—Divorce—Action of Court as to Setting Aside Divorce Proceedings Between Relatrix and Former Husband Held Not Error.**

    In bastardy proceedings where it appeared that a divorce of relatrix and a former husband had been collusively obtained, refusal of the court to direct the state's attorney to institute an action to set aside the divorce proceedings held not error.

5. **Bastards—Instructions—Presumptions — Instruction as to Presumption of Legitimacy Held Proper.**

    In bastardy proceedings where evidence tended strongly to show divorced husband of relatrix the father of the child, rather than defendant, held, an instruction relative to the presumption of legitimacy should have been given.

Appeal from Circuit Court, Minnehaha County; Hon. L. L. Fleeger, Judge.

Bastardy proceedings by the State, on the relation of Edna Alice McAlpin, against Charles F. Gremmels. From a judgment and order denying new trial, defendant appeals. Judgment and order reversed. .

*Kirby, Kirby & Kirby,* of Sioux Falls, for Appellant.

*Danforth & Barron* and *Christopherson & Melquist,* all of Sioux Falls, for Respondent.

(2) To point two of the opinion, Respondent cited: Bookhout v. State (Wis.), 28 N. W. 179.

DILLON, J. Respondent, Edna Alice McAlpin, gave birth to a bastard child on October 30, 1920. The jury found that the appellant was the father of such child after a plea of "not guilty." On October 19, 1921, judgment was entered. From this judgment and the order denying a motion for a new trial, defendant appeals.

[1] Appellant asserts error in refusing to allow certain testimony, viz: Q.. Tell us what was done and said and what took place. After the court sustained the objection, appellant then offered to show by the witness that in October, 1918, while in the room with Mrs. McAlpin in the Arlington Hotel, she and another woman, both of whom has been drinking, grabbed hold of him and took off all his clothes and pushed him into bed between them. Objection sustained.

There was a sharp conflict in the evidence as to the paternity of the child. Chapter 50, Laws of 1899, contains a new amendment to the bastardy statute. We believe that this amendment has never been construed by this court, but it clearly becomes our duty to uphold this provision of the law and make it effective. Here there are no restrictions placed upon the scope of the testimony that may be admitted relative to the previous unchastity of the female, and, unless the evidence be so remote as to become immaterial, it would constitute material evidence in the case. The refusal of this evidence constituted a prejudicial error. Section 2983, R. C. 1919, provides:

"The issue to be tried on such complaint shall be whether the person charged, as aforesaid, is the father of the child, which issue shall be tried by a jury. In any hearing or examination or

trial under this chapter evidence of the previous unchastity of the female shall be admissible."

[2] It will be noticed that previous unchastity is not a defense, but is competent evidence bearing on the paternity of the child.

[3] Appellant assigns error in refusing to permit questions asked on cross-examination of the relatrix as to living separate and apart from the husband during which time money was procured from one Baird for adulterous intercourse with relatrix and that thereafter she went back again to live with him. Also, in sustaining objections to questions asked relatrix on cross-examination relative to procuring a car from Mr. Baird in settlement of an action for seduction of the wife against him. The refusal to allow these questions to be answered on cross-examination constituted prejudicial error. The broadest latitude should be allowed the defendant to fully cross-examine the relatrix on these matters.

[4] The summons in the divorce action of Edna Alice McAlpin v. Jack W. McAlpin is dated February 7, 1919, and complaint is verified on the same day. It charges the relatrix with consorting with other men, and with infidelity. Appearance made by an attorney; stipulation filed, waiving notice of issue and trial, findings of fact, and conclusions of law. The case was heard, decree of divorce granted without any visible change of the domicile of either husband or wife. It appeared from the evidence that the respondent and her former husband had not come to an actual separation until May 15, 1920, at which time the relatrix sold out the Arlington Hotel and has not been engaged in any employment since.

Appellant contends that the court should have held the divorce proceedings to be collusive and void. We think the trial court committed no error in refusing to direct the state's attorney to institute an action to set aside the divorce proceedings. This could only be accomplished by a direct proceeding instituted for that purpose. Such attack would be collateral and, in addition, such refusal would be discretionary.

In McAlpin v. Baird, 40 S. D. 180, 166 N. W. 639, is shown an action on the part of the husband for the debauching of plaintiff's wife. An interesting chapter may also be found in McAlpin

v. Gremmels, 44 S. D. 373, 184 N. W. 4, an action for her own seduction. The matters referred to strongly support the assertion made by appellant that the divorce was a collusive one.

The date of birth was October 30, 1920, and by counting backwards from the date of birth the period of gestation would begin about January 1, 1920. Mr. McAlpin was at her place on January 2, 1920, in the evening at 7 o'clock, showing an opportunity for access within the usual period of gestation. The length of his stay does not appear from the evidence. On this occasion he put a ring on her finger to see if it would fit. The ring was for another woman whom he was about to marry. It appears from plaintiff's testimony that her former husband's clothing, personal effects, and suit case remained at her place. The evidence does not disclose just when they took up separate domiciles, but it does not appear that Mr. McAlpin continued to reside in the Arlington Hotel while the divorce action was pending. Defendant testifies that he was not at her room during the month of December, 1919, or January, 1920, and disputes practically all of the relatrix's testimony.

One Lars Steensland went to the Arlington Hotel and met Mrs. McAlpin about Christmas, 1920. He rapped on the door, and she said, "Hello, where have you been all this time?" She asked him to come in at a time when she did not have much clothing on; her chemise was all.

On one occasion Mrs. McAlpin asked Mrs. Gremmels if she knew about the $25,000 suit brought against Mr. Gremmels, and said she understood they had the money, and said, "You will have to come across with $500 or I will put him (Gremmels) in the pen."

Joe Borer testified:

"In January, 1920, I roomed a week at the Arlington Hotel and knew Mrs. McAlpin. I have been in her room several times. Several nights we had poker parties up there. There was some liquor in evidence, and certain members of the party were going up to her room and giving her drinks. In looking for a certain party, I found him in Mrs. McAlpin's room about midnight. She was intoxicated. Mr. Gremmels was not there at any of these times. On one of these occasions when I went to her room, the party whose name I do not know was sitting on the bed. Each

had a glass; the bottle was sitting on the floor by the bed. I went in there and excused myself, and this party asked me what I was doing there. I told him that I was looking for him. He said that, if I ever mentioned anything that I had seen, he would shoot me, or something like that, and I went out. I came back afterwards, and Mrs. McAlpin asked me to come over and sit on the bed. She had on just a nightgown. That was somewhere about midnight."

Mrs. McAlpin appeared in St. Paul in August or September, 1920, a short time before the date of the birth of the child, at which time she knew that Mr. McAlpin was married to another woman. She mailed the "Bye-bye-Billy" letter from St. Paul to Beaver Creek, Minn. This letter is as follows:

"Dear Pete: Got home all right last night. Walked all the way from the depot. Now be sure and send me some, not less than 20 more, if possible as I have to pay the hospital in advance and might have to go to h—— before you have another pay day. Bye-bye-Billy."

"Pete" was not McAlpin's name, but a way he told her to write him in case his other wife should get the letter. " 'Bye-bye-Billy' is myself," she testified. Under these circumstances, it is clear that the ex-husband might have been recognizing the offspring which was about to reach birth. He was paying the expenses. "Before you have another pay-day" certainly was an indication that further sums were to be paid by the ex-husband.

[5] We think the attention of the jury should have been called to the presumptions of law in reference to the legitimacy and illegitimacy of the child, and, in view of the doubts and uncertainties presented in this case, the judgment and order denying the motion for a new trial are reversed.

Note.—Reported in 197 N. W. 682. See, Headnote, American Key-Numbered Digest, (1) Bastards, Key-No. 59, 7 C. J. Sec. 115; (2) Bastards, Key-No. 23, 7 C. J. Secs. 63, 115; (3) Bastards, Key-No. 59, 7 C. J. Secs. 117, 118; (4) Bastards, Key-No. 69, 7 C. J. Sec. 141 (1925 Anno.); (5) Bastards, Key-No. 71, 7 C. J. Sec. 138.

On evidence of specific instances to prove character of mother for chastity in bastardy proceedings, see notes in 14 L. R. A. (N. S.) 733 and L. R. A. 1916B, 1053.